Corkie R. ROBINSON, Appellant,

v.

Louis W. SULLIVAN, Secretary of Health and Human Services, Appellee.

No. 91–2433.

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 13, 1991.

Decided Feb. 12, 1992.

Julie Frank, Omaha, Neb., argued, for appellant.

Daniel Morris, Asst. U.S. Atty., Omaha, Neb., argued, for appellee.

Before JOHN R. GIBSON, Circuit Judge, FRIEDMAN,* Senior Circuit Judge, and MAGILL, Circuit Judge.

MAGILL, Circuit Judge.

Appellant Corkie R. Robinson appeals the denial of his claims for Social Security disability insurance benefits and Supplemental Security Income benefits. Robinson, a butcher by trade, filed his claim on

* THE HONORABLE DANIEL M. FRIEDMAN, Senior United States Circuit Judge for the Federal Circuit, sitting by designation.

December 9, 1987, alleging he had been unable to work since August 16, 1984, because of back and neck injuries sustained when he was twisted among beef carcasses at a processing plant.

Robinson's initial claim and his motion for reconsideration were denied. He sought and was granted a hearing before an administrative law judge, who disallowed Robinson's claim. The Appeals Council rejected Robinson's request for review, making the ALJ's determination the final decision of the Secretary. Robinson filed suit in federal district court challenging the Secretary's decision. The district court [1] found that the ALJ's denial of benefits was supported by substantial evidence on the record as a whole. We affirm.

### I.

Robinson asserts three errors on appeal: (1) the ALJ improperly discredited Robinson's claim that pain related to his physical injuries renders him disabled; (2) the ALJ failed to account for Robinson's non-exertional impairments and, therefore, erroneously applied the Medical–Vocational Guidelines without eliciting testimony from a vocational expert; and (3) the ALJ erred in failing to find Robinson disabled because Robinson is in need of retraining.

 Our review of the agency decision is limited to whether there is substantial evidence on the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g) (1988); *Russell v. Sullivan,* 950 F.2d 542, 544 (8th Cir.1991). This requires us to do more than merely parse the record for substantial evidence supporting the Secretary's decision. We also must consider evidence in the record that detracts from the weight of the decision. Substantial evidence is less than a preponderance, but enough so that a reasonable mind might find it adequate to support the conclusion. Therefore, if it is possible to draw two inconsistent positions from the evidence and one of those positions represents the agency's findings, we must affirm the decision. *Cruse v. Bowen,* 867 F.2d 1183, 1184 (8th Cir.1989).

Robinson testified at his October 7, 1988, administrative hearing that he was then forty-four years old, had a ninth grade education, and had last worked on August 16, 1984. Robinson stated he experiences severe back and neck pain, testicle pain, pain in his hip joint, and pain and tingling in his right leg. He takes Motrin for his back pain, and Cipro [2] for his testicle infection.

Robinson testified that he has difficulty lifting more than ten pounds, walking more than one block, standing for more than ten minutes, sitting for more than fifteen minutes, and alternating standing and sitting for more than twenty-five minutes; has decreased grip strength; and has difficulty stooping, bending, climbing, and reaching. He testified that pain forces him to lie down two to three times every day for a total of two to three hours. He said his days consist of driving his daughter to school, watching television and lying down. He testified that he is unable to contribute to housework. Robinson's wife, Jewel, also testified and corroborated the testimony as to his limitations and restrictions.

After reviewing the testimony and medical evidence, the ALJ followed the sequential evaluation process set forth at 20 C.F.R. §§ 404.1520 and 416.920 (1991).[3]

---

1. The Honorable William G. Cambridge, United States District Judge for the District of Nebraska.

2. Motrin is intended for relief of mild to moderate pain. Physician's Desk Reference 2352 (46th ed. 1992). Cipro is intended for the treatment of infections. *Id.* at 1590.

3. If at any point in the procedure the claimant is found disabled or not disabled, the review is complete.

 (b) *If you are working.* If you are working and the work you are doing is substantial gainful activity, we will find that you are not disabled regardless of your medical condition or your age, education, and work experience.

 (c) *You must have a severe impairment.* If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience. However, it is possible for you to have a period of disabili-

The ALJ specifically found that Robinson was afflicted with the following severe impairments: (1) cervical and lumbosacral strain; (2) epididymitis; (3) bone scan evidence of mild kyphoscoliosis with nonuniformity of upper lumbar vertebral body; and (4) mild scoliosis of the lumbar spine and moderate diffuse bulging at L4–5 and L3–4 with probable small central disc protrusion.

Further, the ALJ found that Robinson's impairments did not singly or in combination medically equal any of the impairments qualifying a person for disability under the Guidelines. 20 C.F.R. § 404, Subpart P, App. 1 (1991). The ALJ, however, determined that Robinson would be unable to perform his past relevant work as a butcher. Nevertheless, the ALJ found that Robinson had the residual functional capacity to perform the full range of light and sedentary work.[4] Therefore, the ALJ ruled that Robinson was not disabled.

The ALJ further ruled that Robinson's subjective complaints of pain, as well as the testimony of Jewel Robinson, were not credible. Correspondingly, the ALJ gave no weight and consideration to pain as a non-exertional impairment limiting Robinson's residual functional capacity to perform light and sedentary work. The ALJ, therefore, relied exclusively on the Guidelines in determining Robinson's capacity to do work in the national economy.

### A. Application of *Polaski* Factors

■ Robinson asserts the ALJ improperly applied the Eighth Circuit standard in discrediting his subjective complaints of pain. An ALJ may not reject a claimant's subjective complaints of pain solely on the basis of personal observations. *Polaski v. Heckler,* 739 F.2d 1320, 1322 (8th Cir.), *supplemented,* 751 F.2d 943 (8th Cir.1984), *vacated,* 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974 (1986), *adhered to on remand,* 804 F.2d 456 (8th Cir.1986), *cert. denied,* 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987). Rather, the ALJ must make express credibility determinations and set forth on the record inconsistencies that lead to this conclusion.

■ The ALJ specifically must consider the claimant's prior work record, as well as observations by third parties regarding: (1) daily activities; (2) the duration, frequency and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions. *Polaski,* 739 F.2d at 1322. Credibility determinations must be supported by substantial evidence. *Rautio v. Bowen,* 862 F.2d 176, 179 (8th Cir.1988).

■ While there is little doubt that Robinson experiences pain, the question we must address is whether the pain is so severe that he cannot perform any light or sedentary work. *Russell,* 950 F.2d at 545. The record is clear that the ALJ considered

---

ty for a time in the past even though you do not now have a severe impairment.

(d) *When your impairment(s) meets or equals a listed impairment in appendix 1.* If you have an impairment(s) which meets the duration requirement and is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.

(e) *Your impairments(s) [sic] must prevent you from doing past relevant work.* If we cannot make a decision based on your current work activity or on medical facts alone, and you have a severe impairment(s), we then review your residual functional capacity and the physical and mental demands of the work you have done in the past. If you can still do this kind of work, we will find that you are not disabled.

(f) *Your impairment(s) must prevent you from doing any other work.* (1) If you cannot do any work you have done in the past because you have a severe impairment(s), we will consider your residual functional capacity and your age, education, and past work experience to see if you can do other work. If you cannot, we will find you disabled. 20 C.F.R. § 404.1520 (1991).

**4.** In determining the physical exertion requirements of jobs in the national economy, jobs are classified as sedentary, light, medium, heavy and very heavy. The definitions of these terms correspond to the definitions found in the *Dictionary of Occupational Titles,* published by the Department of Labor. 20 C.F.R. § 404.1567 (1991). The Medical–Vocational Guidelines indicate there are approximately 1600 light and sedentary jobs for unskilled persons in the national economy. Social Security Rule 85–15 at 3 (1985).

the *Polaski* factors before finding Robinson's complaints of disabling pain exaggerated and not credible. We find that the ALJ's determination is supported by substantial evidence on the record as a whole.

The ALJ first found that Robinson's work record was somewhat inconsistent after 1972. Robinson's vocational report shows that while he was not injured until 1984, he did not work at all from 1973 to 1977.

The ALJ also considered the duration, frequency and intensity of pain, as well as precipitating and aggravating factors. While Robinson claims his pain is constant and disabling, the record reveals that Dr. Saporta, the initial treating physician, reported that as a result of a request from the patient, he released Robinson to work on October 17, 1984, two months after the accident. Similarly, Robinson asked Dr. Kratochvil on May 9, 1985, to be allowed to return to work. Kratochvil released Robinson for work on May 13, 1985. Dr. Tribulato reported on December 11, 1985, that although Robinson should not return to heavy work, he was suitable for retraining for other employment. Robinson's vocational evaluator remarked on November 25, 1985, that Robinson's only medical restrictions were to seek lighter work.

Moreover, the ALJ found and the record reveals that Robinson made no complaints of neck pain between January of 1986 and February of 1988. When he was treated at the University of Nebraska Medical Center on March 6, 1988, he complained of pain associated with his testicles, but did not complain of neck pain.

The ALJ also considered the dosage, effectiveness and side effects of medication and treatment. All doctors who treated Robinson for back and neck pain prescribed conservative treatment, including physical therapy, muscle relaxants, heat and sound treatments, and pain relievers. The record reveals no evidence that Robinson sought more aggressive treatment. Robinson testified that pain relievers relieved his pain somewhat and only occasionally caused a slight queasiness in his stomach. The record also reveals that Robinson told Dr.

Mathews at the University of Nebraska Medical Center in May of 1988 that Motrin helped his back pain, but he did not take it regularly. Moreover, Robinson told his vocational counselor in January of 1986 that he was not taking any pain medication.

Based on this evidence, the ALJ certainly could conclude that Robinson's treatment history as well as medical testimony of his treating physicians contradict his claims of disabling pain. *See Thomas v. Sullivan,* 928 F.2d 255, 259 (8th Cir.1991); *Benskin v. Bowen,* 830 F.2d 878, 884 (8th Cir.1987) (treatment by hot showers and taking doses of Advil and aspirin do not indicate disabling pain); *Cruse,* 867 F.2d at 1187 (minimal consumption of pain medication reveals lack of disabling pain); *Rautio,* 862 F.2d at 179 (failure to seek aggressive treatment and limited use of prescription medications not suggestive of disabling back pain).

Moreover, Robinson's requests to return to work belie the account of his daily activities. The fact that Robinson sought to return to work in October of 1984 and May of 1985 contradicts statements about his inability to perform housework. Robinson's testimony as to his daily activities reveals other inconsistencies. Robinson testified he drove his daughter two blocks to school every day and returned home immediately. He later testified he drove a total of approximately one and one-half miles each day. The record also revealed that Robinson apparently felt well enough to attempt to lift a heavy tool box in April of 1988.

Finally, the ALJ considered the functional restrictions on Robinson and again found inconsistencies. While Robinson reported difficulty sitting, the vocational report showed he had no difficulty sitting throughout the testing. While Robinson reported he could not lift more than ten pounds, Dr. Kratochvil gave him a lifting and carrying restriction of twenty pounds. And while Robinson reported difficulty standing, the ALJ's personal observation at the administrative hearing revealed no difficulty standing.

If an ALJ discredits testimony and explicitly gives good reasons for so doing, we are bound by that judgment unless it is not supported by substantial evidence on the record as a whole. We find substantial evidence on the record as a whole to uphold the ALJ's determination that Robinson's claims of disabling pain were not credible.

The ALJ also discredited the testimony of Robinson's wife. Despite our repeated directives that the Secretary specifically discuss each credibility determination made, *see Smith v. Heckler*, 735 F.2d 312, 317 (8th Cir.1984), the Secretary has once again failed to list specific reasons for discrediting the testimony of Jewel Robinson. Nevertheless, it is clear that the ALJ specifically addressed Jewel Robinson's testimony and found it not credible. This finding is supported by the same evidence that proved Robinson's claims not credible. While it is preferable that the ALJ delineate the specific credibility determinations for each witness, an "arguable deficiency in opinion-writing technique" does not require us to set aside an administrative finding when that deficiency had no bearing on the outcome. *Benskin*, 830 F.2d at 883.

## B. Application of the Guidelines

▮▮▮ Robinson asserts the ALJ erred in applying the Medical–Vocational Guidelines to him without soliciting testimony from a vocational expert. Once a determination is made that a claimant cannot perform past relevant work, the burden shifts to the Secretary to prove there is work in the economy the claimant can perform. If the claimant is found to have only exertional impairments, the Secretary may meet this burden by referring to the Medical–Vocational Guidelines. *Rainey v. Bowen*, 814 F.2d 1279, 1282 (8th Cir.1987); *Tucker v. Heckler*, 776 F.2d 793, 795 (8th Cir.1985). But if the claimant is also found to have non-exertional impairments that diminish the claimant's capacity to perform the full range of jobs listed in the Guidelines, the Secretary must solicit testimony from a vocational expert to establish that there are jobs in the national economy that the claimant can perform. *Id.; Buck v. Bowen*, 885 F.2d 451, 454 (8th Cir.1989).

▮▮▮ Since the ALJ explicitly discredited the subjective complaints of pain, the ALJ properly refused to supplement the Guidelines on this ground. *Carlock v. Sullivan*, 902 F.2d 1341, 1343 (8th Cir.1990). Nevertheless, Robinson argues the use of the Guidelines was inappropriate because he suffers from numerous other non-exertional impairments, including restricted motion and difficulties with repetitive lifting, prolonged standing, stooping, reaching, balancing, pulling, carrying, crouching, kneeling, and crawling.

The ALJ, relying on medical evidence, implicitly rejected Robinson's contention that he was limited by any non-exertional impairments, concluding "[t]he claimant has the residual capacity to perform the full range of light work." The ALJ found only that Robinson was unable to lift or carry more than twenty pounds, and had difficulty with prolonged standing and walking, as well as frequent bending, stooping and climbing. We find substantial evidence on the record as a whole to uphold this determination.

Even if the ALJ's conclusion was unsupported by the record, however, Robinson's claim would fail. Most of the activities he lists as non-exertional are exertional impairments. Social Security Rule No. 83–14 at 5–6 (1983) (sitting, standing, walking, lifting, carrying, pushing, and pulling are primary strength requirements, not non-exertional impairments). Most of the remaining functions are not implicated by light and sedentary work. A person would not need to crouch and would need to stoop only occasionally to perform substantially all sedentary and light jobs. Social Security Rule No. 83–14 at 6 (1983); Social Security Rule No. 85–15 at 18 (1985). Similarly, the inability to crawl is of little significance in the world of work. Social Security Rule 85–15 at 18 (1985). Finally, relatively few jobs in the national economy require climbing or balancing. Social Security Rule 83–14 at 6 (1983). The only functions asserted by Robinson that are not explicitly exertional impairments or irrelevant to light and sedentary work are reaching and the restriction in motion. The only evidence in the record that Robinson has difficulty

reaching or has a restricted range of motion is his discredited testimony. Therefore, the ALJ correctly concluded that Robinson was capable of performing the full range of light and sedentary work under the Guidelines.

### C. Retraining

Finally, Robinson argues that he should receive benefits because he is disabled until he can be retrained. The ALJ found that Robinson is classified as a younger individual, that he has a limited education, and that he is semi-skilled. These conclusions are supported by substantial evidence on the record as a whole. Therefore, the issue of transferability of work skills is irrelevant to the disability determination. 20 C.F.R. § 404, Subpt. P, App. 2, Table No. 2, Rule No. 202.18 (1991).

### II.

For the foregoing reasons, we affirm the district court's affirmance of the Secretary's denial of benefits to Robinson.