James R. BISHOP, Appellant,

v.

Louis W. SULLIVAN, M.D., Appellee.

No. 89–2673.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1990.

Decided April 11, 1990.

Jacqueline Guidry, Kansas City, Mo., for appellant.

Alleen S. Castellani, Kansas City, Mo., for appellee.

Before MAGILL and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

HEANEY, Senior Circuit Judge.

James R. Bishop appeals from the order of the district court affirming the final decision of the Secretary of Health and Human Services denying Bishop's claim for Social Security disability insurance benefits. For the reasons stated below, we reverse and remand.

## BACKGROUND

Bishop, 52, has a high school education and past work experience as an auto body repairman, insurance salesman, and car salesman. He is blind in his left eye and experiences trouble with his vision in his right eye. He suffers from pain due to degenerative arthritic changes in his back, for which he underwent a decompressive laminectomy [1] and diskectomy in September 1986. He also claims to suffer from

---

**1.** A laminectomy is the surgical excision of the posterior arch of a vertebra. *Dorland's Illustrat-* *ed Medical Encyclopedia* 711 (26th ed.1985).

depression and pain and numbness in his right leg. Bishop retains insured status for disability benefits through June 1989 and alleges disability commencing on June 1, 1986.

Bishop's application for disability benefits was denied through the reconsideration level and he received a hearing before an administrative law judge (ALJ). Bishop testified that his back pain causes him difficulty bending and stooping, that he can stand for only thirty to forty-five minutes before experiencing severe pain in his middle and lower back, and that he can sit comfortably for only about five minutes without having to change position. He suffers from frequent headaches. He also testified that he can lift no more than five pounds without back pain. He stated that his right leg sometimes goes numb and fails to support him, and that he sometimes has to use his left foot to work the gas pedal and brake in his car. He also stated that he walks the equivalent of about two blocks per day, but that even walking short distances causes pain in his back and right leg.

Bishop testified that he takes 1000 milligrams of aspirin four times per day, lies down for fifteen minutes five or six times per day, participates in a physical therapy program, and uses a TENS unit to alleviate his pain. Bishop also stated that he was very nervous and depressed, and that he attends individual and group counseling sessions at the Veterans Administration hospital. Because Bishop has a history of alcoholism, now in remission, his doctor declined to prescribe antidepressants for him. Bishop stated that he sleeps only about four hours per night.

Bishop's daily activities include listening to the radio, sitting or lying down, reading large-print books, and making charcoal drawings. He occasionally helps his wife with a small amount of laundry or dishwashing, but performs no other chores in the house or yard. He stated that he attends church services weekly.

The ALJ also received testimony from Patricia Perdaris, a vocational expert. Perdaris described Bishop's past job as an auto salesman as skilled, light work with a heavy level of stress. She stated that if Bishop's testimony were fully credible, no jobs that he could perform exist in substantial numbers in the national economy due to his need to lie down periodically during the day and his inability to lift more than five pounds. The ALJ asked Perdaris whether jobs existed for an individual with normal vision in only one eye and an inability to bend or to lift more than thirty pounds repeatedly, who should be subjected only to low or mild levels of stress, but who could engage in rapid walking or other mild aerobic activity and who could use tools or climb ladders within safety limitations. Perdaris responded that such an individual could perform the jobs of dispatcher, can packager, or photocopy machine operator.

The ALJ found that Bishop suffers from degenerative disk disease of the lumbosacral spine, optic atrophy of the left eye, and an adjustment disorder with depression. The ALJ determined that Bishop's subjective complaints of pain, numbness, and limitation of motion were not credible based on the medical evidence, Bishop's ability to drive a car and help with household chores, and Bishop's demeanor during the hearing. The ALJ also discredited Bishop's complaints regarding symptoms of depression because of the medical evidence and Bishop's demeanor. The ALJ concluded that Bishop retained the residual functional capacity to perform a wide range of light work, and that he was capable of performing his past work as an auto salesman or a similar sales position. Accordingly, the ALJ found Bishop not disabled.

Bishop filed a request for review of the hearing decision with the Department of Health and Human Services. The Department requested, and Bishop provided, additional medical evidence from November 1979 through April 1988. The Appeals Council denied review, however, concluding that the newly-submitted records contained essentially the same information as previous reports. Bishop then filed an action for judicial review in the district court. On

cross-motions for summary judgment, the district court affirmed the decision of the Secretary.

## DISCUSSION

On appeal, Bishop argues that the Secretary's decision is not supported by substantial evidence on the record as a whole. He claims that the ALJ erred in discrediting his subjective complaints of pain and in concluding that he could return to his past work as an auto salesman.[2]

■ The ALJ found "a wide divergence" between the objective medical evidence and Bishop's subjective complaints. He additionally discredited Bishop's complaints of pain because of his ability to drive a car and perform household chores and because of his demeanor at the hearing. An ALJ "may not discredit allegations of pain merely because of a lack of objective evidence." *Ludden v. Bowen*, 888 F.2d 1246, 1248 (8th Cir.1989) (citing *Benson v. Heckler*, 780 F.2d 16, 17 (8th Cir.1985)). An ALJ may discredit subjective complaints of pain only if they are inconsistent with the record as a whole. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (order), *supplemented*, 751 F.2d 943 (8th Cir.1984), *vacated*, 476 U.S. 1167, 106 S.Ct. 2885, 90 L.Ed.2d 974, *adhered to on remand*, 804 F.2d 456 (8th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3211, 96 L.Ed.2d 698 (1987).

■ The medical evidence of record submitted prior to the hearing consists of 65 pages, 26 of which are illegible because of poor copy quality or handwriting. The medical evidence submitted to the Appeals Council after the issuance of the ALJ's decision comprises an additional 99 pages, 39 of which are illegible for the same reasons.[3] This court has held that illegibility of important evidentiary material can warrant a remand for clarification and supple-

mentation. *Miller v. Heckler*, 756 F.2d 679, 680–81 (8th Cir.1985); *Brissette v. Heckler*, 730 F.2d 548, 550 (8th Cir.1984); *see also Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir.1975) (illegible medical reports provide reviewing court with no way to determine whether the Secretary fully understood the medical evidence before him).

■ It is the ALJ's duty to develop the record fully and fairly, even in cases in which the claimant is represented by counsel. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir.1985). Based on the record before us, we cannot determine whether Bishop's combined impairments following his back surgery meet or equal a listed impairment or whether he is otherwise disabled. We doubt that the ALJ could properly decipher all the medical reports any better than we could. On remand, the parties should determine which of the existing medical records are relevant and provide the ALJ with legible copies of these records or direct interrogatories to doctors and hospital personnel. If the ALJ requires additional evidence to make a disability determination, he should order consultative examinations to be performed at the expense of the Social Security Administration. *See* 20 C.F.R. § 404.1517(a) (1989).

■ Because we are remanding this case for an additional administrative hearing, we feel compelled to address the other reasons the ALJ gave for discrediting Bishop's testimony. The ALJ found Bishop's ability to drive a car and to help with laundry and dishwashing inconsistent with his subjective complaints. We have stated previously, however, that " '[a]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled.' " *Ludden v. Bowen*, 888

---

2. Bishop also claims that his impairments meet or equal the criteria for vertebrogenic disorders in the Listing of Impairments, and that the ALJ should have found him disabled on that basis. *See* 20 C.F.R. Part 404, Subpart P, App. 1, § 1.05(C) (1989). Because of the illegible quality of much of the medical evidence, and because we remand this case for further development of the record, we do not reach this issue.

3. In view of the illegibility of the supplemental evidence submitted after the hearing, we question the Appeals Council's conclusion that these reports contained essentially the same information as the previously submitted evidence.

F.2d 1246, 1248 (8th Cir.1989) (quoting *Easter v. Bowen,* 867 F.2d 1128, 1130 (8th Cir.1989)). Bishop testified that he does "a little bit of laundry" and "a dish or two now and then," and that he performs no other household or yard work. Under these circumstances, we do not believe that Bishop's household activities are inconsistent with his allegations of pain. Similarly, evidence that a claimant can drive a car is not dispositive of the disability question. *Ludden,* 888 F.2d at 1248. Bishop testified that he drives infrequently and only with difficulty. Consequently, his ability to drive is not inconsistent with his allegations of pain.

■ The ALJ additionally based his disbelief of Bishop's subjective complaints on Bishop's demeanor at the hearing. An ALJ may not reject subjective complaints of pain solely on the basis of personal observations. *Lanning v. Heckler,* 777 F.2d 1316, 1317 (8th Cir.1985). The ALJ stated:

> The Administrative Law Judge observed that the claimant was able to walk into the hearing room without significant difficulty, sit throughout the entire hearing, and rise from his chair and walk from the room in a [sic] essentially normal fashion at the conclusion of the hearing. Consequently, the undersigned is convinced that the claimant retains the capacity to lift at least 20 pounds at a time with frequent lifting and carrying of objects weighing up to 10 pounds and to stand or walk about 6 hours out of an 8-hour workday.

Decision of ALJ at 5.

■ We do not believe that a claimant's ability to sit for an hour is substantial evidence to support a finding that the claimant can stand or walk for six hours. Moreover, the ALJ's stated observations are at least partially erroneous. The hearing transcript indicates that Bishop requested and received the ALJ's permission to stand up during part of his testimony, presumably because he experienced discomfort sitting.

Equally disturbing are the ALJ's conclusions regarding Bishop's mental condition based on his demeanor at the hearing:

> At the hearing, the claimant described several different kinds of depressive symptomatology but at no time did he exhibit mood disturbances, memory problems, or difficulty concentrating. Consequently, the Administrative Law Judge is convinced that the claimant experiences at most a "slight" restriction of daily living activities and/or difficulty in maintaining social functioning. Based on his demeanor during the hearing and his answers to questions put to him, the claimant "seldom" experiences deficiencies of concentration, persistence or pace.

Decision of ALJ at 6.

■ On remand, the ALJ should base his evaluation of Bishop's mental impairments on evidence from qualified mental health professionals. Should the medical record require additional development, it is the ALJ's duty to develop the record by directing interrogatories to Bishop's physicians or by ordering consultative examinations.

Bishop also claims that the ALJ erred in concluding that he could return to his past work as an auto salesman. The testimony of the vocational expert lends support to this contention. The vocational expert described the job of auto salesman as an occupation involving heavy stress. The ALJ noted that Bishop should not be exposed to "undue stress on a continuous basis," but concluded, despite the vocational expert's testimony, that Bishop could deal adequately with the stress involved in selling cars. On remand, if the evidence indicates that Bishop cannot perform his past relevant work, the ALJ should elicit testimony from a vocational expert. The vocational expert should have the opportunity to review a complete and legible record, to hear Bishop's testimony, and to answer hypothetical questions that clearly set forth all of Bishop's impairments, including credible allegations of pain. *See Ledoux v. Schweiker,* 732 F.2d 1385, 1388 (8th Cir.1984); *O'Leary v. Schweiker,* 710 F.2d 1334, 1343 (8th Cir.1983).

### CONCLUSION

We reverse the order of the district court granting summary judgment to the Secre-

tary and remand the case for further proceedings consistent with this opinion.